*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00218-CR

Edward **PRUITT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-5795
Honorable Mary D. Román, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed: April 14, 2010

AFFIRMED

A jury found appellant Edward Pruitt guilty of aggravated robbery with a deadly weapon. After the jury found an enhancement allegation based on a prior robbery true, appellant was sentenced to twenty-five years confinement in the Texas Department of Criminal Justice-Institutional Division. On appeal, appellant complains the trial court erred in failing to sustain a hearsay objection, and the evidence is factually insufficient to support his conviction. We affirm the trial court's judgment.

**BACKGROUND**

On September 26, 2006, Rose Mary Macias was working as a manager at a Dollar General store. Macias testified that during the lunch hour she noticed a man standing at a closed register. She asked the man to move to the open register. Macias stated that after she rang up the man's items, he leaned over the counter and told Macias to give him the money from the register or he would kill her. The man emphasized his threat by lifting his shirt and showing Macias a handgun that was tucked into his shorts. Macias testified she was scared, and gave the man all the money from the register, which was approximately two hundred dollars. Macias said that after the man left, she called 911. Bexar County Sheriff Deputy Jason Tibbs was the first law enforcement officer to arrive at the store. Macias gave him a description of the robber.

Although Macias was the only witness to the robbery, there was someone in the parking lot who surmised that a robbery had taken place. That person, Tony Duran, followed the suspect, calling police and giving them the license plate number of the suspect's vehicle. After he lost sight of the suspect's car, Duran, at the request of police, returned to the Dollar General to give a statement. At trial, Deputy Tibbs and Investigator Aaron von Muldau testified Duran gave a description of the suspect, the suspect's car, as well as the license plate number. However, Duran insisted he needed to leave and return to work. According to officers, Duran also expressed that he wanted no involvement in the case. Duran gave officers his address; however, it was later discovered Duran no longer lived at the address he had given, and authorities were unable to locate him for trial.

Police conducted an investigation at the store, which included attempting to lift fingerprints from a cooler and taking prints from the cash register area. However, none of the prints lifted could be linked to Pruitt. They also searched for the license plate number provided by Duran. The license

plate was traced to Derata A. Thompson. One of the officers recognized the name, and he remembered that an associate of Thompson's, Pruitt, fit the description of the robber provided by Macias. Accordingly, an officer prepared a photo array that included Pruitt's photograph. The photo array was shown to Macias, and she identified Pruitt as the robber. She later identified him at trial. After Macias's initial identification, officers looked for Pruitt. He was ultimately found in California and extradited back to Texas to stand trial.

## ANALYSIS

Pruitt raises two points of error on appeal. First, he contends the trial court erred in failing to sustain his hearsay objection regarding testimony given by Investigator Muldau about Duran's statements to police. Within this first point of error, Pruitt also contends his Sixth Amendment rights were violated because he was unable to cross-examine Duran. Second, he claims the evidence was factually insufficient to support his conviction, pointing to the absence of any physical evidence linking him to the robbery.

### *Hearsay*

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). If the trial court's decision falls within the "zone of reasonable disagreement," it has not abused its discretion, and the ruling must be upheld. *Id*. Conversely, if the ruling "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree," the ruling is erroneous. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

At trial, the State offered the testimony of Investigator von Muldau. The following exchange between the prosecutor and von Muldau prompted a hearsay objection, and forms the basis for Pruitt's appellate complaint:

Q [Prosecutor]: When it came time to ask Mr. Duran to come down and give a witness statement, how did that go?

A [von Muldau]: Badly.

Q [Prosecutor]: What do you mean by that?

A [von Muldau]: He said that he –

[Pruitt's attorney]: Objection, Your Honor. Once again, hearsay response. He can tell us what happened without going into the conversation.

The Court: This is part of his investigation, and so the objection is overruled.

[Pruitt's attorney]: Thank you, Your Honor.

Q [Prosecutor]: Go ahead.

A [von Muldau]: Mr. Duran would have spoken to Deputy Tibbs, gave him all the information concerning what he observed. Deputy Tibbs identified Mr. Duran, gave information to me. When I approached Mr. Duran, he was very adamant that he needed to go; his job apparently was on the line. His boss would be very upset that he was coming back from work, or from lunch late. He said that he would talk to me later, but he felt that he did not want to get any further involved. He did his deed by giving us the information that he did give us.

Q [Prosecutor]: And the information that he provided to Deputy Tibbs, was that the license plate number?

A [von Muldau]: He provided the license plate number and the description of the man running from the place.

Pruitt complains that portions of the investigator's testimony, those portions relating to what Duran had told law enforcement about the suspect and his license plate number, should not have been admitted because it was hearsay. When summed up, the testimony from Investigator von

Muldau's testimony that forms the basis of Pruitt's hearsay challenge is that Duran was helpful because he gave authorities a description of the suspect and the suspect's license plate number. However, this very same testimony was admitted earlier in the trial without objection. Deputy Tibbs testified about the information provided by Duran as follows:

> Q [Prosecutor]: Okay. Was he [Duran] able to provide you with some information?
>
> A [Tibbs]: Yes. He was.
>
> Q [Prosecutor]: Without going into the exact information, what was the type of information that he provided to you?
>
> A [Tibbs]: Okay. He gave me a description of the suspect and a description of the vehicle and license plate number for the vehicle.

A comparison of the testimony establishes that Deputy Tibbs testified to the exact same information provided by Investigator von Muldau, but Pruitt failed to object to Deputy Tibbs's testimony. And, this is the very testimony that forms the basis of Pruitt's first point of error. To preserve error regarding the admission of evidence, a party must make a proper objection and get a ruling on that objection. TEX. R. APP. P. 33.1; *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Additionally, a party must object each time the allegedly inadmissible evidence is offered or obtain a running objection. *Valle*, 109 S.W.3d at 509. When the evidence complained of is admitted without objection elsewhere, error as to the admission of the evidence is waived. *Id.* Here, the evidence about which Pruitt complains, i.e, Investigator von Muldau's statements about the information provided by Duran, was admitted through Deputy Tibbs without objection. Accordingly, Pruitt waived any error with regard to the admission of this evidence.

Moreover, even if Pruitt had preserved this complaint for appellate review, it is without merit. Hearsay is a statement, other than one made by the declarant while testifying, offered into

evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Investigator von Muldau's testimony, as well as that of Deputy Tibbs, was that Duran provided a description of the suspect and a license plate number. This testimony explained how Pruitt became a suspect–the license plate number yielded the name of a woman, and Deputy Tibbs recognized the woman's name and recalled she had an associate fitting Pruitt's description. Police officers may testify to explain how the investigation began and how the defendant became a suspect. *Lee v. State*, 29 S.W.3d 570, 577-78 (Tex. App.—Dallas 2000, no pet.) (citing *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995)). The trial court could have concluded, and obviously did based on its statement that "[t]his is part of his investigation," that von Muldau's testimony did not lead to the inescapable conclusion that Duran was testifying through Muldau, but was merely advising the jury how Pruitt became a suspect. Accordingly, the complained of testimony was not hearsay, and the trial court did not err in overruling Pruitt's objection. *See id.*

In addition to arguing von Muldau's testimony should not have been admitted because it violated the prohibition against admission of hearsay evidence, Pruitt also complains that his Sixth Amendment right to confrontation was violated because he was unable to cross-examine Duran. However, Pruitt did not raise a Sixth Amendment or confrontation objection, but merely objected on grounds of "hearsay," and the Sixth Amendment grounds were not apparent from the context of his objections. *See* TEX. R. APP. P. 33.1(a). Even constitutional errors, including Sixth Amendment complaints, may be waived if they are not voiced at trial. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding that hearsay objection failed to preserve error on Sixth Amendment grounds); *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (holding Sixth Amendment claim waived by failing to object on that basis at trial). In *Paredes*, the defendant objected to the

admission of certain evidence based on hearsay. 129 S.W.3d at 535. On appeal, he claimed the admission of the evidence violated his rights to confront the witnesses against him under the Sixth Amendment. *Id.* The court of criminal appeals held the defendant failed to preserve any Sixth Amendment error. *Id.* In this case, just as in *Paredes*, Pruitt objected only on hearsay grounds, failing to raise any Sixth Amendment claim. We therefore hold he has waived any complaint based on the Sixth Amendment.

Based on the foregoing, we find appellant's point of error waived. If not waived, it is without merit, and is overruled.

### *Factual Sufficiency*

In a challenge to the factual sufficiency of the evidence, we look at the evidence in a neutral light, giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Our review "must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder." *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The fact finder is the exclusive judge of the witnesses' credibility and the weight to be given their testimony and may choose to believe all, some, or none of it. *Moore v. State*, 935 S.W.2d 124, 126 (Tex. Crim. App. 1996).

Pruitt's factual sufficiency contention is based on his claim that the State had but one eyewitness, and no physical evidence. His argument centers around the fact that investigators were

unable to obtain any fingerprints belonging to Pruitt, arguing the State should have been able to present more evidence, i.e, fingerprints, additional witnesses. However, the relevant appellate standard is not based on what evidence the State might have presented, but rather whether the evidence actually presented was sufficient to support the jury's verdict. *See Watson*, 204 S.W.3d at 414-15. And, in fact, a jury may convict a defendant of aggravated robbery without any fingerprint or DNA evidence. *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Accordingly, we will examine the evidence in a neutral light and determine if it was sufficient to support Pruitt's conviction for aggravated robbery.

A person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, the person intentionally, knowingly, or recklessly causes bodily injury to another or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02 (Vernon 2003). A person commits the offense of aggravated robbery if the person commits the offense of robbery and uses or exhibits a deadly weapon. *Id*. § 29.03(a)(2).

Macias, the Dollar General store manager, testified that as she rang up items for an alleged customer, the customer leaned over the counter and said, "give me the f— money . . . give me the f— money or else I'll kill you. Don't make me use it or else I'll kill you." She said the man then lifted his shirt and showed her a handgun tucked into the waistband of his shorts. Macias told the jury the man was angry, grinding his teeth, and she was nervous and scared. Macias said the man, whom she later described as a large, African-American male, was standing right beside her at the counter, and the lighting in the store was "good." Macias later identified Pruitt as the robber from a photo array prepared by law enforcement. She testified she did not hesitate when she picked Pruitt

from the photo array. According to Investigator von Muldau, the photo array was comprised of other African-American males with facial features similar to Pruitt's. Macias also identified Pruitt during trial as the man who committed the robbery at the Dollar General store.

Deputy Tibbs testified that when he arrived, Macias was able to describe the robber as an African-American male, approximately 6' 2" tall and 180 pounds. Deputy Tibbs stated he was also given information from a man, Duran, who followed the robber's vehicle when it left the Dollar General parking lot. Duran supplied a description of the suspect, his vehicle, and a license plate number. Deputy Tibbs testified that when he ran the license plate number through the police database, it gave Derata A. Thompson as the vehicle's owner. Deputy Tibbs recognized the unusual name, and remembered that an associate of Thompson's "kind of matched the description of the suspect that was involved in the robbery." This led investigators to Pruitt, resulting in his identification by Macias in the photo array and ultimately in his arrest.

In addition to the testimony, the State introduced a surveillance video of the robbery, and several photos of the Dollar General store. The State also introduced the photo array prepared by Investigator von Muldau from which Macias identified Pruitt as the man who robbed her. The video, photographs, and photo array were admitted as evidence.

It was the jury's responsibility to resolve the conflicts in the evidence and weigh the credibility choices. We must "afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon*, 253 S.W.3d at 705. Here, the jury could have found Macias's testimony, including her identification of Pruitt, credible, and rejected Pruitt's assertion that this was a case of mistaken identity. The jury was free to accept Deputy Tibbs's testimony in which he recalled that a man associated with the vehicle followed by Duran

matched the description of the robber given by Macias. Giving deference to the jury's resolution of the credibility issues, the State's evidence that Pruitt committed aggravated robbery, as charged in the indictment, is not greatly outweighed by evidence to the contrary. *See id.*; *Watson*, 204 S.W.3d at 414-15. Nor was the evidence so weak that the verdict is clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414-15. Accordingly, we overrule Pruitt's second issue and affirm the trial court's judgment.

                        Marialyn Barnard, Justice

Do Not Publish